IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY DWAYNE REED,

    Petitioner,　　　　　　　　　No. 2:11-cv-1026 JAM KJN P

    vs.

GARY SWARTHOUT,

    Respondent.　　　　　　　　　FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is respondent's motion to dismiss the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases.  Respondent argues petitioner fails to state a cognizable federal habeas corpus claim for relief.  Petitioner filed an opposition, and respondent did not file a reply.  For the reasons stated below, the court recommends that respondent's motion to dismiss be granted in part and denied in part.

    Petitioner challenges the state court's denial of habeas relief in connection with the 2009 decision by the Governor to reverse the 2009 Board of Parole Hearings ("Board") finding that petitioner was suitable for parole.

////

II. <u>Standards</u>

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4, Rules Governing Section 2254 Cases; see also White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (meritorious motions to dismiss permitted under Rule 4); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983) (Rule 4 "explicitly allows a district court to dismiss summarily the petition on the merits when no claim for relief is stated"). However, a petition for writ of habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971). "Summary dismissal is appropriate only where the allegations are vague [or] conclusory or palpably incredible, . . . or patently frivolous or false." Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990) (internal quotations and citations omitted).

III. <u>Procedural Due Process Claims</u>

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no

1  constitutional or inherent right of a convicted person to be conditionally released before the
2  expiration of a valid sentence."). However, "a state's statutory scheme, if it uses mandatory
3  language, 'creates a presumption that parole release will be granted' when or unless certain
4  designated findings are made, and thereby gives rise to a constitutional liberty interest."
5  Greenholtz, 442 U.S. at 12; see also Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987) (a
6  state's use of mandatory language ("shall") creates a presumption that parole release will be
7  granted when the designated findings are made.).

8  California's parole statutes give rise to a liberty interest in parole protected by the
9  federal due process clause. Swarthout v. Cooke, 131 S. Ct. 859, 863 (2011). In California, a
10 prisoner is entitled to release on parole unless there is "some evidence" of his or her current
11 dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29
12 Cal.4th 616, 651-53 (2002). However, in Swarthout the United States Supreme Court held that
13 "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive
14 federal requirement." Swarthout, 131 S. Ct. at 864. In other words, the Court specifically
15 rejected the notion that there can be a valid claim under the Fourteenth Amendment for
16 insufficiency of evidence presented at a parole proceeding. Id. at 864. Rather, the protection
17 afforded by the federal due process clause to California parole decisions consists solely of the
18 "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be
19 heard and . . . a statement of the reasons why parole was denied." Swarthout, 131 S. Ct. at 863-
20 64.

21 In Swarthout, the United States Supreme Court reversed two Ninth Circuit
22 decisions that had each examined the sufficiency of evidence supporting a determination that
23 petitioner continued to pose a threat to public safety; in the first case, the Ninth Circuit had
24 reversed the Board's denial of parole, Cooke v. Solis, 606 F.3d 1206, 1213 (2010); in the second
25 case, the Ninth Circuit reversed the Governor's reversal of the Board's grant of parole, Clay v.
26 Kane, 384 Fed. Appx. 544, 546 (2010). The Supreme Court reversed both judgments of the

3

1  Ninth Circuit, holding that "[n]o opinion of [the Supreme Court's] supports converting
2  California's 'some evidence' rule into a substantive federal requirement." Swarthout, 131 S. Ct.
3  at 860-61.  In other words, the Court specifically rejected the notion that there can be a valid
4  claim under the Fourteenth Amendment for insufficiency of evidence presented at a parole
5  proceeding.  Id. ("Because the only federal right at issue is procedural, the relevant inquiry is
6  what process [petitioner] received, not whether the state court decided the case correctly.").
7  Rather, the protection afforded by the federal due process clause to California parole decisions
8  consists solely of  the "minimal" procedural requirements set forth in Greenholtz, specifically "an
9  opportunity to be heard and . . . a statement of the reasons why parole was denied." Swarthout,
10 131 S. Ct. at 862.  Provided these procedural requirements are met, it is of no consequence that
11 the final parole decision is made by the Governor rather than the Parole Board.  Id. at 863.

12         On June 6, 2011, the Ninth Circuit held that the Governor is not required to hold a
13 second parole suitability hearing before reversing the Board's determination that the prisoner was
14 suitable for parole.  Styre v. Adams, 645 F.3d 1106 (9th Cir. 2011).

15         Thus, "the beginning and the end of the federal habeas courts' inquiry" is whether
16 petitioner received "the minimum procedures adequate for due-process protection." Swarthout,
17 131 S. Ct. at 862.  Here, the record reflects that petitioner was present, with counsel, at the
18 August 6, 2009 parole hearing, that petitioner participated in the hearing, and that, although the
19 Board found petitioner eligible for parole, the Governor, applying the same criteria in his
20 December 31, 2009 decision, denied parole with a statement of reasons, which petitioner
21 received.  (Dkt. No. 1 at 147-204, Dkt. No. 1 at 212-15.)  According to the United States
22 Supreme Court, the federal due process clause requires no more.[1]  The court finds, therefore, that

---

[1] As the Court of Appeals for the Ninth Circuit explained, "[t]he only federal right at issue in the parole context is procedural, and the only proper inquiry is what process the inmate received, not whether the state court decided the case correctly. Stuart v. Carey, 2011 WL 2709255 (9th Cir. 2011), citing Swarthout, 131 S. Ct. at 863.  Petitioner cannot obtain more process by attempting to characterize the nature of his claims in a different way.

4

1 petitioner's due process challenge is without merit, and respondent's motion to dismiss
2 petitioner's due process claims should be granted.
3 IV.  Ex Post Facto Claim
4          Petitioner contends that the Governor's reversal of the Board's grant of parole
5 violated the Ex Post Facto Clause because the retroactive application of the California
6 constitutional provision allowing gubernatorial review of parole decisions was adopted after
7 petitioner committed the underlying offense, and increased petitioner's punishment.
8          Respondent moves to dismiss this claim as foreclosed by Johnson v. Gomez, 92
9 F.3d 964, 965 (9th Cir. 1996) ("Ex post facto principles do not bar retroactive application of
10 procedural changes when the effect of the change upon a petitioner's actual punishment is only
11 speculative and could not be known with certainty.").
12          In the petition, petitioner relies on Garner v. Jones, 529 U.S. 244, 249 (2000),
13 which was decided after Johnson.  It appears undisputed that article V, section 8(b) was enacted
14 four years after petitioner committed his offense.  Petitioner argues that in 2009, the Board set an
15 aggregate term of imprisonment of 22 years.  (Dkt. No. 1 at 47.)  By then, petitioner had served
16 25 years.  Petitioner contends that when the Governor reversed parole, petitioner had served 26
17 years, increasing petitioner's sentence in violation of the Ex Post Facto Clause.
18          Respondent failed to address the application of Garner.  (Dkt. No. 11 at 3-4.)
19          The Ex Post Facto Clause is a limitation on legislative power that forbids passage
20 and application of laws that retroactively either alter the definition of crimes or increase the
21 punishment for criminal acts.  Garner, 529 U.S. at 250; Johnson, 92 F.3d at 968; Calif. Dept. of
22 Corr. v. Morales, 514 U.S. 499, 504 (1995).  In Morales, the Court considered a California
23 statute lengthening the intervals between subsequent[2] parole suitability hearings for prisoners
24 convicted of more than one homicide.  Morales, 514 U.S. at 503.  The statute did not change the

---

[2]  Subsequent parole suitability hearings are the periodic hearings after an initial hearing. See Cal. Penal Code § 3041.5.

5

statutory punishment, the standards for determining suitability for parole, or the "basic structure of California's parole law." Id. at 507. Nor did the statute prohibit requests for early consideration for parole based on a change in circumstances. Id. at 512-13. Furthermore, the Board represented that its practice was to review all such requests for merit. Id. Therefore, nothing in the record suggested that, despite the statute, a prisoner might arbitrarily be denied an expedited hearing because of the change. Id. Given these facts, retroactive application of the law did not create "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Id. at 514.

In Garner, the court reviewed a prisoner's Ex Post Facto challenge to "the retroactive application of a Georgia law permitting the extension of intervals between parole considerations." Id., at 246. The Supreme Court identified two methods a habeas petitioner may raise an Ex Post Facto challenge. Id. 529 U.S. 253. First, petitioner may demonstrate that the new rule "by its own terms [creates] a significant risk of increasing punishment" for the crime. Id. at 253-55. If such a facial challenge fails, petitioner may "demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." Id., at 255.

While both Johnson and Garner involved facially neutral laws, the prisoner in Garner argued that the statute was unconstitutional "as applied." The Supreme Court held that to prevail on an "as applied" challenge to a facially neutral law, a prisoner must demonstrate that the way in which state officials exercise their discretion creates a significant risk of increased punishment. Garner, 529 U.S. at 256-57. The way to prove such an abuse is by reference to documentary evidence, such as informal policies. The Court in Garner did not alter already existing Ex Post Facto jurisprudence. It simply explained the essence of an "as applied," as opposed to a facial, challenge to a statute. Therefore, Garner did not overrule Johnson.

////

Moreover, the statutes at issue in Morales and Garner are different from the one at issue here and in Johnson. The former two allowed state officials to defer subsequent parole suitability hearings by up to three and eight years, respectively. Morales, 514 U.S. at 503; Garner, 529 U.S. at 247. The latter adds another layer of review by the Governor. The Board and the Governor apply the same standard and consider the same facts. Compare, Brown v. Palmateer, 379 F.3d 1089, 1095 (9th Cir. 2004) (application of newly enacted facially neutral statute violated ex post facto clause by altering the standard by which it was determined whether to postpone a parole suitability hearing). Under Garner, a disagreement between the Governor and Board about how the facts measure up to the standard will not necessarily increase the punishment. There must be evidence about how the governor exercised his discretion. See Garner, 529 U.S. at 253-54.

Therefore, the question of whether there has been an Ex Post Facto violation in the instant case turns on issues of fact. When a law does not facially increase punishment, "the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the [entity] charged with exercising discretion that its retroactive application will result in a longer period of incarceration than under the earlier rule." Garner, 529 U.S. at 245. Petitioner must show that as applied to his own sentence the law created a significant risk of increasing his punishment." Id., at 255. Put another way, petitioner must submit evidence that the Governor did not properly exercise his discretion. Id., at 523-24. While this fact may be difficult for petitioner to show, petitioner is entitled to attempt to make that showing. Heller v. Powers-Mendoza, 2007 WL 963330 (E.D. Cal. March 29, 2007) (improper to dismiss Ex Post Facto claim under Garner on a motion to dismiss).[3]

////

---

[3] The court notes that petitioner failed to address his Ex Post Facto claim in his opposition to the motion to dismiss. Petitioner is cautioned that failure to brief this issue in his traverse or reply may result in a recommendation that the claim be denied.

Accordingly, respondent's motion to dismiss petitioner's Ex Post Facto claim should be denied.

## VI. Conclusion

For all of the above reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's July 14, 2011 motion to dismiss (dkt. no. 11) petitioner's due process claims be granted;

2. Respondent's motion to dismiss petitioner's Ex Post Facto claim be denied;

3. Within thirty days after service of the district judge's order adopting the instant findings and recommendations, respondent shall file an answer. Thirty days thereafter, petitioner shall file a traverse.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 13, 2011

_/s/ Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

reed1026.mtd