1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GREGORY DWAYNE REED,

11          Petitioner,                    No. 2:11-cv-1026 JAM KJN P

12      vs.

13   GARY SWARTHOUT,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17          Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18   of habeas corpus pursuant to 28 U.S.C. § 2254.  By order filed December 9, 2011, petitioner's

19   due process claims were dismissed with prejudice, and the parties were directed to brief

20   petitioner's remaining ex post facto claim.  For the reasons stated below, the court recommends

21   that petitioner's ex post facto claim be denied.

22          Petitioner challenges the state court's denial of habeas relief in connection with

23   the 2009 decision by the Governor to reverse the Board of Parole Hearings ("Board") finding that

24   petitioner was suitable for parole.

25   ////

26   ////

1  II.  Procedural Background

2  On August 4, 2010, the Alameda County Superior Court issued the last reasoned

3  state court decision denying the petition for writ of habeas corpus.  Although the court did not

4  expressly address petitioner's ex post facto claim, the court cited In re Rosenkrantz, 29 Cal.4th

5  619, 677 (Cal. 2002), in analyzing petitioner's "some evidence" due process claim.  (Dkt. No. 1

6  at 223-26.)

7  On September 2, 2010, the California Court of Appeal, First Appellate District,

8  issued a summary denial of the petition.  (Dkt. No. 1 at 227.)

9  On November 23, 2010, the California Supreme Court, sitting en banc, denied the

10  petition for review without comment.  (Dkt. No. 1 at 228.)

11  III.  Standards for a Writ of Habeas Corpus

12  An application for a writ of habeas corpus by a person in custody under a

13  judgment of a state court can be granted only for violations of the Constitution or laws of the

14  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

15  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

16  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

17  Federal habeas corpus relief is not available for any claim decided on the merits in

18  state court proceedings unless the state court's adjudication of the claim:

19      (1) resulted in a decision that was contrary to, or involved an
    unreasonable application of, clearly established Federal law, as

20      determined by the Supreme Court of the United States; or

21      (2) resulted in a decision that was based on an unreasonable
    determination of the facts in light of the evidence presented in the

22      State court proceeding.

23  28 U.S.C. § 2254(d).

24  Under section 2254(d)(1), a state court decision is "contrary to" clearly

25  established United States Supreme Court precedents if it applies a rule that contradicts the

26  governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

2

1   indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different

2   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

3          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4   habeas court may grant the writ if the state court identifies the correct governing legal principle

5   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6   prisoner's case.  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A federal habeas court "may not

7   issue the writ simply because that court concludes in its independent judgment that the relevant

8   state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

9   that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S.

10  63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

12  omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

13  so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

14  Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

15         The court looks to the last reasoned state court decision as the basis for the state

16  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

17  decision, "and the state court has denied relief, it may be presumed that the state court

18  adjudicated the claim on the merits in the absence of any indication or state-law procedural

19  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

20  overcome by a showing that "there is reason to think some other explanation for the state court's

21  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

22         Where the state court reaches a decision on the merits but provides no reasoning

23  to support its conclusion, the federal court conducts an independent review of the record.

24  "Independent review of the record is not de novo review of the constitutional issue, but rather,

25  the only method by which we can determine whether a silent state court decision is objectively

26  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where there is no

1    reasoned state court decision, the federal court must "independently review the record." Stanley

2    v. Cullen, 2011 WL 285218, at *4 (9th Cir. Jan. 31, 2011) (quoting Pirtle v. Morgan, 313 F.3d

3    1160, 1167 (9th Cir. 2002)).  In making such a review, "a habeas court must determine what

4    arguments or theories supported, or . . . could have supported, the state court's decision; and then

5    it must ask whether it is possible fairminded jurists could disagree that those arguments or

6    theories are inconsistent with the holding in a prior decision of [the Supreme] Court."

7    Harrington, 131 S.Ct. at 786.  The habeas petitioner has the burden of "showing there was no

8    reasonable basis for the state court to deny relief."  Id., at 784.

9    IV.  Petitioner's Ex Post Facto Claim

10                   A.  Parties' Arguments

11           In 1985, petitioner was convicted of first degree murder with use of a deadly

12   weapon, and was sentenced to a state prison term of 26 years to life.  (Dkt. No. 1 at 1.)  In 1988,

13   there was a change in the law when voters passed Proposition 89, which added section 8(b) to

14   Article V of the California Constitution, and amended California Penal Code § 3041.2, to give

15   the Governor the right to review the Board's parole decisions.  On August 6, 2009, the Board

16   found petitioner suitable for parole.  (Dkt. No. 1 at 194.)  Petitioner argues that in 2009, the

17   Board set an aggregate term of imprisonment of 22 years.  (Dkt. No. 1 at 47.)  By 2009, petitioner

18   had served 25 years.  (Id.)  Petitioner contends that when the Governor reversed parole, petitioner

19   had served 26 years, thus increasing petitioner's sentence in violation of the ex post facto Clause.

20   Petitioner relies on Garner v. Jones, 529 U.S. 244, 249 (2000) (in parole hearing interval

21   challenge, court required prisoner to show that as applied to his own sentence, the law created a

22   significant risk of increased punishment).

23           Respondent argues that petitioner's claim is foreclosed by Johnson v. Gomez, 92

24   F.3d 964, 965, 967 (9th Cir. 1996) (amendment pursuant to Proposition 89 did not violate ex post

25   facto clause because the law removed final parole decision from Board to Governor, and the

26   alleged effect upon prisoner's actual punishment was only speculative, not certain.).  Respondent

                                                    4

1    contends that petitioner presents no evidence that his punishment was actually increased, and

2    cannot demonstrate such an increase in punishment because petitioner was never found suitable

3    for parole under the prior law (dkt. no. 1 at 146-204).  Respondent also argues that petitioner

4    presented no evidence demonstrating that Proposition 89 changed the definition of criminal

5    conduct for which he was convicted, or altered the standards for parole eligibility.

6              In his traverse (dkt. no. 17 at 8), petitioner appears to argue that "changed

7    standards" create a sufficiently significant risk of longer incarceration to violate the ex post facto

8    clause, citing Brown v. Palmateer, 379 F.3d 1089 (9th Cir. 2004) (applying Garner to parole

9    regulation that gave parole board new discretion to find that a prisoner is a danger to the

10   community despite the contrary conclusions of a psychological evaluation).  Petitioner also

11   argues that the constriction of available release dates is a sufficiently significant increase in the

12   possibility of serving a more lengthy period of incarceration in violation of the ex post facto

13   clause, citing Himes, 336 F.3d at 859 (noting possibility that petitioner could prove an individual

14   ex post facto violation under Garner with respect to statute that removed the parole board's

15   ability to grant a continuum of sanctions for aggravated violation of parole in favor of an

16   all-or-nothing choice between a ninety-day sanction and outright denial of release).

17              B.  State Court Decision

18              As noted above, there is no reasoned state court opinion on the ex post facto

19   claim, but the state court cited Rosenkrantz, 29 Cal.4th at 677, in analyzing the due process

20   claim.  (Dkt. No. 1 at 223-26.)

21              C.  Analysis

22              Article I, section 10 of the United States Constitution states that "[n]o State shall

23   . . . pass any Bill of Attainder [or] ex post facto Law. . . ." U.S. Const., art. I, § 10, cl. 1.  "One

24   function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation,

25   increase the punishment for a crime after its commission."  Garner, 529 U.S. at 250, citing

26   Collins v. Youngblood, 497 U.S. 37, 42 (1990).  To establish an ex post facto violation, a

1  petitioner must show that as applied to his own sentence, the challenged law creates a significant

2  risk of increasing his punishment.  Garner, 529 U.S. at 255; see also Gilman v. Schwarzenegger,

3  2011 WL 198435 (9th Cir. Jan. 24, 2011)[1] (applying Garner's "significant risk" language to an

4  ex post facto challenge); Fletcher v. Reilly, 433 F.3d 867, 877 (D.C. Cir. 2006) (same).[2]

5  However, a "speculative and attenuated risk of increasing the measure of punishment" is

6  insufficient.  California Department of Corrections v. Morales, 514 U.S. 499, 514 (1995)

7  (without evidence that the new law substantively changed the definition of criminal conduct or

8  altered the standards of parole eligibility, it "create[d] only the most speculative and attenuated

9  risk of increasing the measure of punishment").  Thus, an ex post facto challenge cannot succeed

10  on the merits unless:  (1) the new law on its face created a significant risk of increasing the

11  punishment; or (2) the evidence demonstrates that the retroactive application of the new law will

12  result in a longer period of incarceration than under the earlier law.  Garner, 529 U.S. at 255;

13  Gilman, 2011 WL 198435, at *4; Fletcher, 433 F.3d at 877.

14  ////

15

16  [1]  In Gilman, a civil rights action presently pending in this court, the Ninth Circuit
overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class
action seeking to prevent the Board from enforcing the increased deferral periods established by

17  a recent amendment to California Penal Code § 3041.5 (Marsy's Law).  Gilman, 2011 WL
198435, at *4.  The court concluded that plaintiffs had failed to demonstrate a significant risk

18  that their incarceration would be prolonged by application of Marsy's Law, and thus found that
plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

19  Id.

20  [2]  "Nine circuit courts of appeals that have confronted ex post facto challenges to parole
statutes post-Garner have recognized that Garner requires an as-applied analysis."  Thomas v.

21  Yates, 637 F. Supp. 2d 837, 847-48 (E.D. Cal. 2009).  Although the Ninth Circuit is not one of
those nine, the Ninth Circuit has evaluated ex post facto challenges to parole laws post-Garner,

22  using "Garner's 'significant risk' standard without reference to Johnson or its 'certainty'
requirement."  Thomas, 637 F. Supp. 2d at 854 (citations omitted) (explaining that Johnson does

23  not preclude an ex post facto challenge to article V, section 8(b) under Garner, and citing several
other district courts that applied Garner to similar challenges, but also two courts that concluded

24  that Garner did not overrule Johnson).  The district court in Thomas ultimately found that the
prisoner demonstrated only a speculative possibility of an increased punishment, and denied the

25  petition.  Thomas v. Yates, Case No. 1:05-cv-1198 LJO DLB (E.D. Cal.) (Dkt. Nos. 105; 109).
Thomas v. Yates is presently pending on appeal in the Ninth Circuit.  Id., Case No. 12-15510

26  (9th Cir. 2012).

1          While both <u>Johnson</u> and <u>Garner</u> involved facially neutral laws, the prisoner in

2    <u>Garner</u> argued that the statute was unconstitutional "as applied."  The Supreme Court held that to

3    prevail on an "as applied" challenge to a facially neutral law, a prisoner must demonstrate that

4    the way in which state officials exercise their discretion creates a significant risk of increased

5    punishment.  <u>Garner</u>, 529 U.S. at 256-57.  The way to prove such an abuse is by reference to

6    documentary evidence, such as informal policies.  The court in <u>Garner</u> did not alter already

7    existing ex post facto jurisprudence, but rather explained the essence of an "as applied," as

8    opposed to a facial, challenge to a statute.  Therefore, <u>Garner</u> did not overrule <u>Johnson</u>.[3]

9          Moreover, the statutes at issue in <u>Morales</u> and <u>Garner</u> are different from the one at

10   issue here and in <u>Johnson</u>.  The former two allowed state officials to defer subsequent parole

11   suitability hearings by up to three and eight years, respectively.  <u>Morales</u>, 514 U.S. at 503;

12   <u>Garner</u>, 529 U.S. at 247.  In <u>Johnson</u>, as here, the amended statute adds another layer of review

---

14        [3]  However, one circuit judge noted that "in some respects, <u>Johnson v. Gomez</u> [ ] is
irreconcilably inconsistent with <u>Garner</u> [ ], and so to that degree not binding . . . under <u>Miller v.</u>
15   <u>Gammie</u>, 335 F.3d 889 (9th Cir. 2003) (where reasoning of prior circuit authority clearly
irreconcilable with reasoning of intervening higher authority, a three-judge panel is bound by the
16   later and controlling authority]."  <u>Johnson v. Finn</u>, 2012 WL 423328, *3 (9th Cir. Feb. 10, 2012)
(Berzon, J., concurring).  In <u>Finn</u>, the panel held that the state court did not unreasonably apply
17   clearly established federal law in rejecting the ex post facto challenge to section 8(b).  <u>Finn</u>, at
*1.
18
     In concurring, Justice Berzon noted that although the state court did not cite <u>Rosenkrantz</u>
19   in denying the prisoner's ex post facto claim, it is appropriate to infer that state courts are bound
by <u>Rosenkrantz</u>.  <u>Finn</u>, at *3.  In 2002, the California Supreme Court addressed and rejected the
20   argument that California Penal Code § 3041.2 violates the Ex Post Facto Clause.  <u>Rosenkrantz</u>,
29 Cal. 4th at 677.
21
              [I]n finding no ex post facto violation in Article V, section 8(b),
22            the <u>Rosenkrantz</u> court relied on <u>Mallett</u>, . . . and <u>Johnson</u>, and on
              its analysis that these decisions were neither overruled nor undercut
23            in <u>Garner</u>.  In light of the discussion, above, of <u>Johnson</u> and
              <u>Rosenkrantz</u>, it is clear, at least, that "fairminded jurists could
24            disagree" as to whether the arguments or theories in those decisions
              are consistent or inconsistent with the holding in <u>Garner</u>.  See
25            <u>Harrington</u>, id.

26   <u>Daniel v. Ornoski</u>, 2011 WL 1059137, *9 (C.D. Cal. 2011).

7

1  by the Governor.  The Board and the Governor apply the same standard and consider the same

2  facts.  Compare Brown, 379 F.3d at 1095 (application of newly enacted facially neutral statute

3  violated ex post facto clause by altering the standard by which it was determined whether to

4  postpone a parole suitability hearing).  Under Garner, a disagreement between the Governor and

5  Board about how the facts measure up to the standard will not necessarily increase the

6  punishment.  As the undersigned previously stated:

7  > Therefore, the question of whether there has been an ex post facto
> violation in the instant case turns on issues of fact. . . .  Petitioner

8  > must show that as applied to his own sentence the law created a
> significant risk of increasing his punishment." Garner, 529 U.S. at

9  > 255.  Put another way, petitioner must submit evidence that the
> Governor did not properly exercise his discretion.  Id., at 523-24.

10 > While this fact may be difficult for petitioner to show, petitioner is
> entitled to attempt to make that showing.  Heller v. Powers-

11 > Mendoza, 2007 WL 963330 (E.D. Cal. March 29, 2007) (improper
> to dismiss ex post facto claim under Garner on a motion to

12 > dismiss).

13 (Dkt. No. 14 at 7.)  In other words, the dispositive inquiry is "whether retroactive application of

14 the change in [parole] law create[s] a sufficient risk of increasing the measure of punishment

15 attached to the covered crimes."  Garner, 529 U.S. at 250 (internal citation omitted).

16            Therefore, the court finds that petitioner's ex post facto claim fails under the

17 reasoning of both Johnson and Garner.  Here, as in Johnson, the Governor's review and reversal

18 of the grant of parole were based on the same criteria and record used by the Board.  The added

19 layer of gubernatorial review was neutral, because the Governor had the discretion to either

20 affirm or reverse the Board's grant of parole.  In addition, petitioner was not granted parole by

21 the Board under the law as it existed prior to the 1988 amendment; thus, petitioner cannot

22 demonstrate that an increase in punishment occurred under the amended statute.  Also, the

23 Board's initial parole decision was not final until thirty days after the Governor's review period

24 expired, so this court cannot state with certainty that the Board would have granted petitioner

25 parole had the Board retained final review authority.  Johnson, 92 F.3d at 967.  The possibility of

26 immediate release is largely "theoretical" because, in many cases, a prisoner's release date comes

1    at least several years after a finding of suitability.  Morales, 514 U.S. at 513 (citing a finding by

2    the California Supreme Court).  In addition, the court in Johnson held that the additional level of

3    review was constitutional under Mallet v. North Carolina, 181 U.S. 589, 597 (1901) (no ex post

4    facto violation where law passed after petitioner's crime allowed for higher court review of

5    intermediate court decisions).  Johnson, 92 F.3d at 967.  Thus, the transfer of the final parole

6    decision to the Governor from the Board did not increase petitioner's punishment as his prison

7    term remained 26 years to life.  See id.; see also Lewis v. Veal, 2011 WL 475462, *6-7 (E.D.

8    Cal. Feb. 3, 2011) (rejecting ex post facto claim, finding under Garner and Johnson that

9    Governor's high reversal rate does not sufficiently establish significant risk of increased

10   punishment under facially constitutional statute).

11            Moreover, petitioner's claim also fails under Garner.  Petitioner presents no facts

12   or other evidence demonstrating that, as applied to petitioner's sentence, the 1988 amendment

13   created a sufficient risk of increased punishment.  (Dkt. No. 17 at 7-9.)  On October 14, 2011,

14   this court advised petitioner that the ex post facto claim turned on issues of fact, and that

15   "petitioner must submit evidence that the Governor did not properly exercise his discretion."

16   (Dkt. No. 41 at 7.)  In his traverse, petitioner presented no facts or other evidence showing that

17   the Governor did not follow such commands or policies, or that the Governor did not properly

18   exercise his discretion.  Garner, 529 U.S. at 523-24.  Rather, petitioner simply argued application

19   of legal authorities.  (Dkt. No. 17 at 8-9.)  Therefore, petitioner has not overcome the

20   presumption that the Governor comported with the "statutory commands and internal policies in

21   fulfilling [his] obligations."  Garner, 529 U.S. at 256; Lewis v. Veal, 2011 WL 475462 at *7

22   (E.D. Cal. 2011).  Indeed, the Governor's reversal states that the Governor considered the "very

23   same factors the Board must consider," and review of the Governor's decision reflects that he

24   gave individualized consideration of petitioner's suitability for parole.  (Dkt. No. 16-2 at 33-36).

25   Accordingly, petitioner is not entitled to relief on his ex post facto claim under Garner.  See, e.g.,

26   Seiler v. Brown, 2007 WL 2501518, at *5 (N.D. Cal. Aug. 30, 2007) (petitioner failed to show

1   "with specific facts and details that in [his] case the Governor did not follow the statutory

2   commands and internal policies in fulfilling his obligation to review decisions" of the Board).[4]

3   Thus, petitioner's ex post facto claim also fails under Garner.

4           For all of the above reasons, petitioner's ex post facto claim should be denied.

5   V.  Conclusion

6           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

7   a writ of habeas corpus be denied.

8           These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

13  objections, he shall also address whether a certificate of appealability should issue and, if so, why

14  and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

15  the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

16  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

17  service of the objections.  The parties are advised that failure to file objections within the

18  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst,

19  951 F.2d 1153 (9th Cir. 1991).

20  DATED:  June 14, 2012

    KENDALL J. NEWMAN
21  UNITED STATES MAGISTRATE JUDGE

22  reed1026.157

23

    [4]  Gilman, the 42 U.S.C. § 1983 class action pending in this court, also includes a
24  challenge to Proposition 89 giving the Governor authority to overturn a parole decision, and
    defines the class as "all California state prisoners who have been sentenced to a life term with
25  possibility of parole for an offense that occurred before November 8, 1988."  Id., 2:05-cv-0830
    LKK GGH P, Dkt. No. 340 at 2.  It appears petitioner, sentenced May 28, 1985, to 26 years to
26  life with the possibility of parole, is a member of that class.