1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10    GREGORY DWAYNE REED,

11              Petitioner,                    No. 2:11-cv-1026 JAM KJN P

12         vs.

13    GARY SWARTHOUT,

14              Respondent.            FINDINGS AND RECOMMENDATIONS

15    _____/

16    I. Introduction

17              Petitioner is a state prisoner, proceeding without counsel, with a petition for writ

18    of habeas corpus pursuant to 28 U.S.C. § 2254.  By order filed December 9, 2011, petitioner's

19    due process claims were dismissed with prejudice, and the parties were directed to brief

20    petitioner's remaining ex post facto claim.  For the reasons stated below, the court recommends

21    that petitioner's ex post facto claim be denied.

22              Petitioner challenges the state court's denial of habeas relief in connection with

23    the 2009 decision by the Governor to reverse the Board of Parole Hearings ("Board") finding that

24    petitioner was suitable for parole.

25    ////

26    ////

II.  Procedural Background

On August 4, 2010, the Alameda County Superior Court issued the last reasoned state court decision denying the petition for writ of habeas corpus.  Although the court did not expressly address petitioner's ex post facto claim, the court cited In re Rosenkrantz, 29 Cal.4th 619, 677 (Cal. 2002), in analyzing petitioner's "some evidence" due process claim.  (Dkt. No. 1 at 223-26.)

On September 2, 2010, the California Court of Appeal, First Appellate District, issued a summary denial of the petition.  (Dkt. No. 1 at 227.)

On November 23, 2010, the California Supreme Court, sitting en banc, denied the petition for review without comment.  (Dkt. No. 1 at 228.)

III.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

2

1    indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different

2    result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citation omitted).

3            Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4    habeas court may grant the writ if the state court identifies the correct governing legal principle

5    from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6    prisoner's case.  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A federal habeas court "may not

7    issue the writ simply because that court concludes in its independent judgment that the relevant

8    state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

9    that application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S.

10   63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11   question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations

12   omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief

13   so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

14   Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

15           The court looks to the last reasoned state court decision as the basis for the state

16   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned

17   decision, "and the state court has denied relief, it may be presumed that the state court

18   adjudicated the claim on the merits in the absence of any indication or state-law procedural

19   principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be

20   overcome by a showing that "there is reason to think some other explanation for the state court's

21   decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

22           Where the state court reaches a decision on the merits but provides no reasoning

23   to support its conclusion, the federal court conducts an independent review of the record.

24   "Independent review of the record is not de novo review of the constitutional issue, but rather,

25   the only method by which we can determine whether a silent state court decision is objectively

26   unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where there is no

1  reasoned state court decision, the federal court must "independently review the record." Stanley

2  v. Cullen, 2011 WL 285218, at *4 (9th Cir. Jan. 31, 2011) (quoting Pirtle v. Morgan, 313 F.3d

3  1160, 1167 (9th Cir. 2002)).  In making such a review, "a habeas court must determine what

4  arguments or theories supported, or . . . could have supported, the state court's decision; and then

5  it must ask whether it is possible fairminded jurists could disagree that those arguments or

6  theories are inconsistent with the holding in a prior decision of [the Supreme] Court."

7  Harrington, 131 S.Ct. at 786.  The habeas petitioner has the burden of "showing there was no

8  reasonable basis for the state court to deny relief." Id., at 784.

9  IV.  Petitioner's Ex Post Facto Claim

10           A.  Parties' Arguments

11           In 1985, petitioner was convicted of first degree murder with use of a deadly

12  weapon, and was sentenced to a state prison term of 26 years to life.  (Dkt. No. 1 at 1.)  In 1988,

13  there was a change in the law when voters passed Proposition 89, which added section 8(b) to

14  Article V of the California Constitution, and amended California Penal Code § 3041.2, to give

15  the Governor the right to review the Board's parole decisions.  On August 6, 2009, the Board

16  found petitioner suitable for parole.  (Dkt. No. 1 at 194.)  Petitioner argues that in 2009, the

17  Board set an aggregate term of imprisonment of 22 years.  (Dkt. No. 1 at 47.)  By 2009, petitioner

18  had served 25 years.  (Id.)  Petitioner contends that when the Governor reversed parole, petitioner

19  had served 26 years, thus increasing petitioner's sentence in violation of the ex post facto Clause.

20  Petitioner relies on Garner v. Jones, 529 U.S. 244, 249 (2000) (in parole hearing interval

21  challenge, court required prisoner to show that as applied to his own sentence, the law created a

22  significant risk of increased punishment).

23           Respondent argues that petitioner's claim is foreclosed by Johnson v. Gomez, 92

24  F.3d 964, 965, 967 (9th Cir. 1996) (amendment pursuant to Proposition 89 did not violate ex post

25  facto clause because the law removed final parole decision from Board to Governor, and the

26  alleged effect upon prisoner's actual punishment was only speculative, not certain.).  Respondent

4

1   contends that petitioner presents no evidence that his punishment was actually increased, and

2   cannot demonstrate such an increase in punishment because petitioner was never found suitable

3   for parole under the prior law (dkt. no. 1 at 146-204).  Respondent also argues that petitioner

4   presented no evidence demonstrating that Proposition 89 changed the definition of criminal

5   conduct for which he was convicted, or altered the standards for parole eligibility.

6          In his traverse (dkt. no. 17 at 8), petitioner appears to argue that "changed

7   standards" create a sufficiently significant risk of longer incarceration to violate the ex post facto

8   clause, citing Brown v. Palmateer, 379 F.3d 1089 (9th Cir. 2004) (applying Garner to parole

9   regulation that gave parole board new discretion to find that a prisoner is a danger to the

10  community despite the contrary conclusions of a psychological evaluation).  Petitioner also

11  argues that the constriction of available release dates is a sufficiently significant increase in the

12  possibility of serving a more lengthy period of incarceration in violation of the ex post facto

13  clause, citing Himes, 336 F.3d at 859 (noting possibility that petitioner could prove an individual

14  ex post facto violation under Garner with respect to statute that removed the parole board's

15  ability to grant a continuum of sanctions for aggravated violation of parole in favor of an

16  all-or-nothing choice between a ninety-day sanction and outright denial of release).

17          B.  State Court Decision

18          As noted above, there is no reasoned state court opinion on the ex post facto

19  claim, but the state court cited Rosenkrantz, 29 Cal.4th at 677, in analyzing the due process

20  claim.  (Dkt. No. 1 at 223-26.)

21          C.  Analysis

22          Article I, section 10 of the United States Constitution states that "[n]o State shall

23  . . . pass any Bill of Attainder [or] ex post facto Law. . . ."  U.S. Const., art. I, § 10, cl. 1.  "One

24  function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation,

25  increase the punishment for a crime after its commission."  Garner, 529 U.S. at 250, citing

26  Collins v. Youngblood, 497 U.S. 37, 42 (1990).  To establish an ex post facto violation, a

5

1    petitioner must show that as applied to his own sentence, the challenged law creates a significant

2    risk of increasing his punishment.  Garner, 529 U.S. at 255; see also Gilman v. Schwarzenegger,

3    2011 WL 198435 (9th Cir. Jan. 24, 2011)[1] (applying Garner's "significant risk" language to an

4    ex post facto challenge); Fletcher v. Reilly, 433 F.3d 867, 877 (D.C. Cir. 2006) (same).[2]

5    However, a "speculative and attenuated risk of increasing the measure of punishment" is

6    insufficient.  California Department of Corrections v. Morales, 514 U.S. 499, 514 (1995)

7    (without evidence that the new law substantively changed the definition of criminal conduct or

8    altered the standards of parole eligibility, it "create[d] only the most speculative and attenuated

9    risk of increasing the measure of punishment").  Thus, an ex post facto challenge cannot succeed

10   on the merits unless:  (1) the new law on its face created a significant risk of increasing the

11   punishment; or (2) the evidence demonstrates that the retroactive application of the new law will

12   result in a longer period of incarceration than under the earlier law.  Garner, 529 U.S. at 255;

13   Gilman, 2011 WL 198435, at *4; Fletcher, 433 F.3d at 877.

14   ////

15

16   [1]  In Gilman, a civil rights action presently pending in this court, the Ninth Circuit
     overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class
     action seeking to prevent the Board from enforcing the increased deferral periods established by
17   a recent amendment to California Penal Code § 3041.5 (Marsy's Law).  Gilman, 2011 WL
     198435, at *4.  The court concluded that plaintiffs had failed to demonstrate a significant risk
18   that their incarceration would be prolonged by application of Marsy's Law, and thus found that
     plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.
19   Id.

20   [2]  "Nine circuit courts of appeals that have confronted ex post facto challenges to parole
     statutes post-Garner have recognized that Garner requires an as-applied analysis."  Thomas v.
21   Yates, 637 F. Supp. 2d 837, 847-48 (E.D. Cal. 2009).  Although the Ninth Circuit is not one of
     those nine, the Ninth Circuit has evaluated ex post facto challenges to parole laws post-Garner,
22   using "Garner's 'significant risk' standard without reference to Johnson or its 'certainty'
     requirement."  Thomas, 637 F. Supp. 2d at 854 (citations omitted) (explaining that Johnson does
23   not preclude an ex post facto challenge to article V, section 8(b) under Garner, and citing several
     other district courts that applied Garner to similar challenges, but also two courts that concluded
24   that Garner did not overrule Johnson).  The district court in Thomas ultimately found that the
     prisoner demonstrated only a speculative possibility of an increased punishment, and denied the
25   petition.  Thomas v. Yates, Case No. 1:05-cv-1198 LJO DLB (E.D. Cal.) (Dkt. Nos. 105; 109).
     Thomas v. Yates is presently pending on appeal in the Ninth Circuit.  Id., Case No. 12-15510
26   (9th Cir. 2012).

1          While both Johnson and Garner involved facially neutral laws, the prisoner in

2   Garner argued that the statute was unconstitutional "as applied."  The Supreme Court held that to

3   prevail on an "as applied" challenge to a facially neutral law, a prisoner must demonstrate that

4   the way in which state officials exercise their discretion creates a significant risk of increased

5   punishment.  Garner, 529 U.S. at 256-57.  The way to prove such an abuse is by reference to

6   documentary evidence, such as informal policies.  The court in Garner did not alter already

7   existing ex post facto jurisprudence, but rather explained the essence of an "as applied," as

8   opposed to a facial, challenge to a statute.  Therefore, Garner did not overrule Johnson.[3]

9          Moreover, the statutes at issue in Morales and Garner are different from the one at

10  issue here and in Johnson.  The former two allowed state officials to defer subsequent parole

11  suitability hearings by up to three and eight years, respectively.  Morales, 514 U.S. at 503;

12  Garner, 529 U.S. at 247.  In Johnson, as here, the amended statute adds another layer of review

13

14       [3]  However, one circuit judge noted that "in some respects, Johnson v. Gomez [ ] is
    irreconcilably inconsistent with Garner [ ], and so to that degree not binding . . . under Miller v.
15  Gammie, 335 F.3d 889 (9th Cir. 2003) (where reasoning of prior circuit authority clearly
    irreconcilable with reasoning of intervening higher authority, a three-judge panel is bound by the
16  later and controlling authority]."  Johnson v. Finn, 2012 WL 423328, *3 (9th Cir. Feb. 10, 2012)
    (Berzon, J., concurring).  In Finn, the panel held that the state court did not unreasonably apply
17  clearly established federal law in rejecting the ex post facto challenge to section 8(b).  Finn, at
    *1.
18
        In concurring, Justice Berzon noted that although the state court did not cite Rosenkrantz
19  in denying the prisoner's ex post facto claim, it is appropriate to infer that state courts are bound
    by Rosenkrantz.  Finn, at *3.  In 2002, the California Supreme Court addressed and rejected the
20  argument that California Penal Code § 3041.2 violates the Ex Post Facto Clause.  Rosenkrantz,
    29 Cal. 4th at 677.
21
                [I]n finding no ex post facto violation in Article V, section 8(b),
22              the Rosenkrantz court relied on Mallett, . . . and Johnson, and on
                its analysis that these decisions were neither overruled nor undercut
23              in Garner.  In light of the discussion, above, of Johnson and
                Rosenkrantz, it is clear, at least, that "fairminded jurists could
24              disagree" as to whether the arguments or theories in those decisions
                are consistent or inconsistent with the holding in Garner.  See
25              Harrington, id.

26  Daniel v. Ornoski, 2011 WL 1059137, *9 (C.D. Cal. 2011).

1    by the Governor.  The Board and the Governor apply the same standard and consider the same

2    facts.  Compare Brown, 379 F.3d at 1095 (application of newly enacted facially neutral statute

3    violated ex post facto clause by altering the standard by which it was determined whether to

4    postpone a parole suitability hearing).  Under Garner, a disagreement between the Governor and

5    Board about how the facts measure up to the standard will not necessarily increase the

6    punishment.  As the undersigned previously stated:

7              Therefore, the question of whether there has been an ex post facto
               violation in the instant case turns on issues of fact. . . .  Petitioner
8              must show that as applied to his own sentence the law created a
               significant risk of increasing his punishment."  Garner, 529 U.S. at
9              255.  Put another way, petitioner must submit evidence that the
               Governor did not properly exercise his discretion.  Id., at 523-24.
10             While this fact may be difficult for petitioner to show, petitioner is
               entitled to attempt to make that showing.  Heller v. Powers-
11             Mendoza, 2007 WL 963330 (E.D. Cal. March 29, 2007) (improper
               to dismiss ex post facto claim under Garner on a motion to
12             dismiss).

13   (Dkt. No. 14 at 7.)  In other words, the dispositive inquiry is "whether retroactive application of

14   the change in [parole] law create[s] a sufficient risk of increasing the measure of punishment

15   attached to the covered crimes."  Garner, 529 U.S. at 250 (internal citation omitted).

16           Therefore, the court finds that petitioner's ex post facto claim fails under the

17   reasoning of both Johnson and Garner.  Here, as in Johnson, the Governor's review and reversal

18   of the grant of parole were based on the same criteria and record used by the Board.  The added

19   layer of gubernatorial review was neutral, because the Governor had the discretion to either

20   affirm or reverse the Board's grant of parole.  In addition, petitioner was not granted parole by

21   the Board under the law as it existed prior to the 1988 amendment; thus, petitioner cannot

22   demonstrate that an increase in punishment occurred under the amended statute.  Also, the

23   Board's initial parole decision was not final until thirty days after the Governor's review period

24   expired, so this court cannot state with certainty that the Board would have granted petitioner

25   parole had the Board retained final review authority.  Johnson, 92 F.3d at 967.  The possibility of

26   immediate release is largely "theoretical" because, in many cases, a prisoner's release date comes

at least several years after a finding of suitability.  Morales, 514 U.S. at 513 (citing a finding by the California Supreme Court).  In addition, the court in Johnson held that the additional level of review was constitutional under Mallet v. North Carolina, 181 U.S. 589, 597 (1901) (no ex post facto violation where law passed after petitioner's crime allowed for higher court review of intermediate court decisions).  Johnson, 92 F.3d at 967.  Thus, the transfer of the final parole decision to the Governor from the Board did not increase petitioner's punishment as his prison term remained 26 years to life.  See id.; see also Lewis v. Veal, 2011 WL 475462, *6-7 (E.D. Cal. Feb. 3, 2011) (rejecting ex post facto claim, finding under Garner and Johnson that Governor's high reversal rate does not sufficiently establish significant risk of increased punishment under facially constitutional statute).

Moreover, petitioner's claim also fails under Garner.  Petitioner presents no facts or other evidence demonstrating that, as applied to petitioner's sentence, the 1988 amendment created a sufficient risk of increased punishment.  (Dkt. No. 17 at 7-9.)  On October 14, 2011, this court advised petitioner that the ex post facto claim turned on issues of fact, and that "petitioner must submit evidence that the Governor did not properly exercise his discretion." (Dkt. No. 41 at 7.)  In his traverse, petitioner presented no facts or other evidence showing that the Governor did not follow such commands or policies, or that the Governor did not properly exercise his discretion.  Garner, 529 U.S. at 523-24.  Rather, petitioner simply argued application of legal authorities.  (Dkt. No. 17 at 8-9.)  Therefore, petitioner has not overcome the presumption that the Governor comported with the "statutory commands and internal policies in fulfilling [his] obligations."  Garner, 529 U.S. at 256; Lewis v. Veal, 2011 WL 475462 at *7 (E.D. Cal. 2011).  Indeed, the Governor's reversal states that the Governor considered the "very same factors the Board must consider," and review of the Governor's decision reflects that he gave individualized consideration of petitioner's suitability for parole.  (Dkt. No. 16-2 at 33-36.)  Accordingly, petitioner is not entitled to relief on his ex post facto claim under Garner.  See, e.g., Seiler v. Brown, 2007 WL 2501518, at *5 (N.D. Cal. Aug. 30, 2007) (petitioner failed to show

1  "with specific facts and details that in [his] case the Governor did not follow the statutory

2  commands and internal policies in fulfilling his obligation to review decisions" of the Board).[4]

3  Thus, petitioner's ex post facto claim also fails under <u>Garner</u>.

4         For all of the above reasons, petitioner's ex post facto claim should be denied.

5  V.  <u>Conclusion</u>

6         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

7  a writ of habeas corpus be denied.

8         These findings and recommendations are submitted to the United States District

9  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files

13  objections, he shall also address whether a certificate of appealability should issue and, if so, why

14  and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

15  the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

16  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

17  service of the objections.  The parties are advised that failure to file objections within the

18  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>,

19  951 F.2d 1153 (9th Cir. 1991).

20  DATED:  June 14, 2012

                                    KENDALL J. NEWMAN
21                                  UNITED STATES MAGISTRATE JUDGE

22  reed1026.157

23

---

24  [4] <u>Gilman</u>, the 42 U.S.C. § 1983 class action pending in this court, also includes a
    challenge to Proposition 89 giving the Governor authority to overturn a parole decision, and
25  defines the class as "all California state prisoners who have been sentenced to a life term with
    possibility of parole for an offense that occurred before November 8, 1988."  <u>Id.</u>, 2:05-cv-0830
26  LKK GGH P, Dkt. No. 340 at 2.  It appears petitioner, sentenced May 28, 1985, to 26 years to
    life with the possibility of parole, is a member of that class.